Mr. Stevens, are you ready? May it please the Court, I'm Scott Stevens here on behalf of the appellant Honeywell. The District Court erred in three material ways that warrants reversal in this case, two of which dealt from his summary judgment order and one of which dealt with the post-trial order denying Honeywell its attorney's fees. Each of those three issues is reviewed de novo by this Court. Before I get there, I do note that we have raised a threshold issue regarding this Court's jurisdiction. I'm happy to answer any questions that the panel may have on that, but otherwise I'll spend my time today here speaking about the merits. I'll start there. Yes, sir. So for a rising under-jurisdiction, there are two ways of getting there. One is that patent law creates the cause of action, and the other is this substantial, capable resolution test. You've argued the second, but not the first. You've not argued that patent law creates the cause of action, and I'm curious why. Why is that not the argument that you made under Medtronic? And I'm happy to walk through it, but you chose one of them. I don't exactly understand why you chose the one you did rather than the avenue of showing that the patent law creates the cause of action. I understand the question. Fair enough. I think it's both. I do think the defense, or in this case the declaration seeking unenforceability, arises directly under the patent statute. In fact, that is one of the defenses enumerated in 35 U.S.C., I believe it is, 271D, I'm sorry, excuse me, 282B1. But that seems to ask the wrong question, right? So I thought, and maybe I just don't understand this, I confess I'm not a patent guy. I did a little bit of it way back, but never was much of a patent guy. But I thought under Medtronic, when we have a declaratory compulsory counterclaim, that what we have to do is flip it. And we have to ask what the affirmative claim would be that the declaratory action is seeking to fight, right? And so it's not about whether the declaratory counterclaim arises under patent law. It's whether the responsive claim would be, it's like the fictitious claim. And under Medtronic, it's not the claim that's actually been brought. Here, a breach of contract case, same thing in Medtronic. But it's the claim that could have been brought. And in Medtronic, that was a patent infringement suit. It could have been brought. And it seems similar here that they could have brought a patent infringement suit. Now, maybe it's not likely, but that's sort of what Medtronic says is it doesn't matter whether it's likely. You're 100% right. The analog here, if we look past the D.J. and we go to- But to say I'm 100% right makes me nervous, right? Because people tend to just say that to judges. I'm not. And you didn't make any of these arguments in your briefing. And so we haven't seen any of this discussion. And so it makes me nervous. You're like a patent expert. You make an argument to us. You do not make this argument. You make a very different argument. And I get the desire to just agree with the judge when he asks the question. But it makes me nervous because this is not at all the argument that you made. It has not been the discussion that you've had. And so help me understand either why it wasn't made, why this makes sense, or what I'm missing. Frankly, we think it's entirely clear under the second path. And that's why we focused on the second path. But you're 100% right. If we look to the first path, we have a declaratory judgment here of unenforceability. We look to the analog plaintiff's claim. What would that be? It would have to be a claim for infringement. Well, it doesn't have to be. It could be a claim for breach of contract. It could be either. I don't think unenforceability of a patent stems from a breach of contract. That would be what they sought by their- For patent misuse it would be, though. Like what you've sought is the patent misuse. Well, again, the counterclaim is styled as one for unenforceability. And it's critically important. Frankly, I think the delta or the daylight between myself and my friends at the other table is whether or not they were truly seeking that patent remedy. And they were. In their answer and in their counterclaim, they say unenforceability. Right at the title. Right at the first paragraph. Right at the second paragraph. They say they're seeking to have patents deemed unenforceable. In their prayer of judgment, they're also saying explicitly they're seeking to have patents held unenforceable. At the hearing on the motion to dismiss, Counsel for Opto got up and said, We want this court to make a declaration that Honeywell's patents are unenforceable. And so the analog has to be infringement in that context. But either way, that is a patent law remedy. And the Federal Circuit is- In fairness, I don't see a Fourth Circuit case that answers this one way or the other. So I'm going to look to the Federal Circuit, the sister circuits in the Supreme Court. And the two cases that I think really do button this up, one was cited in the gray brief. It's the Chandler case, 1-4-10-13. That's cited for the proposition that patent unenforceability was at issue before, but not any longer. And I want to be clear in that case, it was at issue before an entirely earlier litigation. Not before in the same litigation. Before an entirely earlier litigation. And so the Federal Circuit held- Well, that doesn't matter. That was an earlier case. And what the Federal Circuit held about the case at issue there was, quote, patent claims will not be invalidated or revived based on the results of this case. That's at 10-16. And they go on to say, quote, this case will not alter the validity of the 9-9-3 patent. That's at 10-18. And that's why the Federal Circuit said in that case they didn't have jurisdiction. Because the validity or enforceability of any patents was not before the court in that particular case. That's what distinguishes this case. Because they specifically sought, vis-a-vis their counterclaim, a declaration that tens or maybe even hundreds of our patents should be deemed unenforceable. That makes this a patent case. Whether you look at the first avenue or the second avenue, that makes this a patent case. And if there's any question about when you're supposed to look, when you're supposed to make this determination, because that's also raised in the brief, Christensen, going back to the Supreme Court case, answers that question. We're supposed to look at this, quote, based on a, quote, ex-ante hypothetical assessment of the elements of the complaint instead of, quote, by reference to the case actually litigated. It goes on to say that since the district court's jurisdiction is determined by reference to the well-pleaded complaint, not the well-tried case, the reference to the Federal Circuit's jurisdiction must be the same. Here, while they ultimately abandoned the remedy that they pled in their counterclaim, that's entirely true. But we are to look ex-ante at their claim as they presented it. They sought a declaration of patent unenforceability, and that's what we believe results in the Federal Circuit having jurisdiction. I'm happy to answer any further questions on that, or I'll move on to the merits. So as I mentioned, there are three. Your view is if you're right about that, then the rest of what we're about to do is irrelevant. Unfortunately, the Supreme Court has made very clear in Christensen that if you don't have jurisdiction, the only question you can answer is should this case be dismissed or transferred to the Federal Circuit in the interest of justice. If you agree with that, we think the case should be transferred. We don't want to start over and have the briefs be thrown away. We would ask this court, if you don't believe you have jurisdiction, to actually make the transfer as opposed to the dismissal at this point in time. The district court's first error was granting summary judgment sua sponte without providing Honeywell notice and a reasonable time to respond, and then in so made two legal errors in saying that Honeywell could have no remedy whatsoever for the breach of the past damages beyond that of the audit. There's two things wrong with that. First, Delaware law is entirely clear that to be an exclusive remedy, there must be a, quote, requisite expression of exclusivity, and that Delaware goes on to say even where a contract provides an explicit remedy, that remedy cannot be viewed as exclusive of other remedies if it lacks the requisite expression of exclusivity. Neither the district court nor my opponent has ever pointed to anything in our contract that said the liquidated damages provision of the audit was exclusive, that there was no way to get any other remedy. In fact, even at the summary judgment hearing, even though we had no idea that the judge would actually get into this, at that hearing he said, quote, isn't it entirely reasonable for Honeywell to be able to bring a suit for breach of the rep and warranty in 5.1 but not be permitted the remedy provided in 5.1 because they didn't conduct the audit within the required year? Some other remedy for breach of warranty, sure, but not that one. And he went on to say the same thing again a few pages later. At the time, he was indicating he was with us, but then ultimately without the benefit of receiving briefing on the topic, said, no, no, no, no, the audit remedy is exclusive, can't have anything else, you live or die by the audit remedy. And let me sort of put the fairness principle there, what that would really mean. Let's say that we did an audit. Let's say that it found $10 million of unreported sales, but there was really $100 million, either for completely nefarious reasons they didn't show the auditor or maybe the auditor missed it. What Judge Bell's order here says is we are without any remedy for that because we have to live and die by the audit. In this particular case, it turned out through full discovery, there was tens of millions of dollars more of underreported sales than the audit actually found. And, again, Judge Bell has told us absolutely unavailable, no remedy is available for that. The second reason was based upon what he believed to be a lack of pleading this issue. But what he doesn't say is Rule 54C explicitly says, putting aside default judgments, every other final judgment should grant the relief to which each party is entitled even if the party has not demanded that relief in its pleadings. Now, we vehemently believe that we fully demanded that relief in our pleadings. As we've shown in the brief, we certainly did so in two paragraphs and in the prayer of relief. It was in our interrogatory response, as you can see in the blue brief. It was in our expert report. We said it over and over again. And, in fact, just two weeks later, Judge Bell issued an order in another case. This is the Boykin case where he says courts have a, quote, duty to grant whatever relief is appropriate in the case on the basis of the facts provided. And so we'd ask this court to reverse the first issue and remand for a jury trial as to the full scope of our damages. As to the second issue, the judge also erred in resolving a question of fact regarding whether we actually complied with the audit. Without any party briefing this issue, simply because the last piece of paper was given past the one-year mark, the judge said that that foreclosed any remedy whatsoever. I want to note this was during COVID. We signed the agreement in January, ultimately signed in February of 2020. OPTA was supposed to, in that agreement, provide us with sales reports so that we could begin a preliminary assessment of whether the rep and warranty was adequate. That didn't happen until September. Never had any reason. Is there any limit on that in your view? Like if you got the snail auditor in month 11 and you hired Mr. Snail and he took 10 years to do this, do you think you'd fall within the time limit? Is there any limit to it? I think that's a jury question. Obviously, if the jury said we hired Mr. Snail for nefarious reasons and Mr. Snail did nothing for the first nine years, we'd probably lose as a matter of fact. That's not at all the case here. Why would that cause you to lose under your interpretation? It wouldn't. Why would your motives in hiring Mr. Snail as opposed to Mr. Hare make a difference? It shouldn't. Now, frankly, I believe that's a question for the jury to answer, but it shouldn't. We believe that it says we needed to conduct the audit within a year. We did that. It is true that the last piece of paper wasn't handed over to us. This was, again, during the height of COVID in Japan. You couldn't just go to their office and say, let me see the documents, which would have taken one or two days. We had to rely upon them to email documents to the auditor. And that took just a few weeks longer than the one year from the one-year anniversary of the signing of the contract. And we don't think in any way that that ran afoul of the notion that we conducted the audit within a year. And putting that aside, we never had the chance to present any of our alternative theories, which were we substantially complied. Even if somebody believes we didn't meet the letter of the law, there's no prejudice in the fact it took just a little bit longer, didn't cost them any extra money, didn't lose them any rights. Moreover, we believe that there's a frustration of purpose here. The fact that it took them eight months to get us that first document, to be able to even assess whether an audit makes any sense, and then later they complain that the audit drug out just a couple weeks longer than it should have. That's a pure question of fact. Both substantial compliance and frustration of purpose are total questions of fact that were inappropriately resolved by this court. Not by this court, by the district court. Moving on to our third part, our third argument, the court erroneously said that we weren't entitled to our attorney's fees. Despite the fact that 4.7 of the agreement says, in the event a party must institute any action to collect any overdue payments, that party shall be entitled to its fees and costs incurred with respect to such an action. In our complaint, we have a whole section called overdue royalty payments. The question that the jury was asked and answered in our favor was, did Opto breach the party settlement agreement by failing to timely pay Honeywell all royalties due under the agreement? May I continue into my rebuttal time? Yes, you may. Thank you, Your Honor. Judge Bell found four reasons against us, two of which are not even attempted to be defended on the appeal. That leaves us with, he held against us because we didn't have the specific two-word phrase prevailing party. That's just plain wrong under Delaware law. Delaware law says no magic words are required. There's no bright line test for attorney's fee shifting. That leaves us just one point. He said that fees doesn't include attorney's fees. I would urge that attorney's fees are probably the number one thing you'd think of when you see the word fees, especially in the context of litigation or what happens if you don't pay. So wherever Black's Law Dictionary defines fees as including attorney's fees. So we don't believe that that was with justification either. So we'd ask this court to reverse on those three points and remand for a jury trial on the remainder of our damages. Thank you, Your Honor. Thank you, Mr. Stephen. Mr. Schmalzbeck. Good morning and may it please the court, Brian Schmalzbeck for Opto Electronics. This case is fundamentally about whether Opto's laser scanning products are 2D barcode products under the licensing agreement. They're not because the agreement itself does not count them as 2D barcode product sales. When it counts those sales. I do want to lead off with the jurisdictional issue. Judge Richardson, to your question, patent law does not create the cause of action here. I would say at the outset that this is waived. I don't know how we could have said more clearly than we did on page 14 of our opposition to their motion that they have not raised this and then in the reply it's just more crickets. So you can waive that ground for it. Jurisdiction though, right? You can't waive a lack of jurisdiction, but you can certainly forfeit an alternate reason why it might be. If a statute tells us that we can't decide something, it doesn't matter whether they argue it or not. I don't get why they didn't argue it either. I'm totally with you, but let's move past that. You can make the argument, but assume that that doesn't get you very far. I'll give my friend credit that he chose not to make a bad argument. And it's a bad argument because the affirmative claim against which that declaratory claim would have been made. Of unenforceability? Yes, of that counterclaim. It can't be for infringement. There's no infringement claim here. And what we say in that counterclaim is that we're incorporating everything we just said about this affirmative defense of patent misuse. There's no infringement claim to have any defense to. But you would agree you are asking for the remedy that you're asking for is unenforceability. So there's a label that, yes, Judge Fenneman, there's a label that says patent unenforceability. And what the Federal Circuit says is we don't just stop at the label. We actually look at the substance of the claim. That's the Jim Arnold case where there is an assertion in the complaint that says we want relief for patent infringement. And the Federal Circuit says that is not within our jurisdiction because when we actually look at the complaint, what's going on there is a breach of contract claim, which is the exact same thing that's happening here. So we don't stop at that label. We actually look and see what is this patent misuse issue responsive to. But if I recall at the hearing before the court, there was this whole argument about the expiration, if those apply, the unenforceability that you all make. In thinking about Medtronics, the Supreme Court has said to us that if there's a threat, not a counterclaim, but if there's a threat, and that was a DJ action where they were trying to say we don't want this to be an infringement. We want the court to say, hey, this is not an infringement. Here we have a counterclaim that says we would like for the patents to be deemed unenforceable. And that's what you all argued below before the court. And so that's my struggle with this whole jurisdiction issue. So, Your Honor, I think we should ask, assuming that there was some reference to patent unenforceability. My friend's argument is... We don't have to assume it. I mean, we can read it. It says it. We don't need to assume that, right? It's in there. You need to look at the gravamen of the counterclaim, which... I understand. But what you can't say is we have to assume that it says unenforceability. It says it. Right. And that's fair. We're not running from that. Okay. It sounds like you're running from it. When you say, assume this fact that is obviously true, it suggests to me that you think that fact is a problem. It's the basis of our argument, which is why we're standing here. It makes no difference that it says unenforceability. Right. It makes no difference. That is our argument, Your Honor.  Because the basis for that unenforceability, as has been confirmed throughout this case, including in the complaint, is that it's unenforceable because there is a covenant not to sue over those patents. That's what Section 2.4 of the licensing agreement does, is it takes those patents off the table. And so you see in Section 2.4, which does say that there's a covenant not to sue for infringement or the other, but everyone understands that when it says we have a covenant not to sue for infringement, that includes not to sue for breach of royalty related to those patents as they pertain to 1D barcode products. So fundamentally, this unenforceability issue is a matter of state contract law, not federal patent law. And that's why they agreed to take themselves away from the patent aspect of it. That's your argument. And that is not a patent. They agreed to limit what otherwise would have been a patent question. Exactly, Your Honor. But that's not what you argued below. What we argued below is that the patents were expired. I can't recall the exact number of the patent, but the patent is expired. And as a result, that it was patent misuse and unenforceability. Yes, Your Honor. And patent misuse is exactly what the Third Circuit just said in Aries Trading, is not the sort of counterclaim that goes straight to the federal circuit. You have to go through this analysis of whether it's – the Third Circuit says two things. One, is there any case-within-a-case patent analysis required? That's the second piece of the arising under question. That's the substantial question piece. That's what the argument was previously about. That's not addressing the question under Medtronic of whether the agreement could be canceled and a patent infringement suit could be brought. Right. But Judge Richardson, the question you have to ask under Medtronic is what is that affirmative claim? And so, yes, if the affirmative claim were for patent infringement, yes, we would have to go to – But not what it was, but what it could be, hypothetically could be, right? Medtronic says it was unlikely that there would be a patent infringement case, but Medtronic says they could have canceled the agreement, which disagreement two could be canceled, and they could then bring a patent infringement suit, right? I read Medtronic when it says that here, Murawski could terminate the contract and bring an ordinary patent infringement action, right? Such an action would arise under federal patent law. That seems like exactly what we have. That's what I'm having trouble with, and maybe I'm not understanding it well or understanding your argument, but the agreement here could be canceled. An infringement action could be brought. I get that's not what happened, but Medtronic doesn't ask me what happened. It asked what could happen. Exactly, and that cannot happen here. There cannot be a patent infringement action that my friends on the other side could bring here for two reasons.  One, because the covenant not to sue in Section 2.4, it takes all of those – But you could cancel the agreement, right? So the part here is like this agreement is not forever binding. You can cancel the agreement. That's what Medtronic was about to – that's the same issue as Medtronic. So what's the second argument? Well, it's not the same issue as Medtronic because there's no contractual basis here for canceling it. I think you can say, well, there can never be – there can always be a hypothetical patent infringement case no matter what the royalty agreement says. I don't think that's the holding of Medtronic. But, Judge Richardson, I would suggest that if the court wants to go down that road of an avenue that my friends on the other side have foreclosed for themselves to the extent that they can, that would be an appropriate subject for supplemental briefing because, candidly, I did not expect – So what's the second argument you got? You said one is that they can cancel the agreement. Therefore, they can't bring a patent infringement case. But what's the other – They can't bring a patent infringement case as to any of the patents covered by the covenant not to sue. And so the only remaining patents are these expired patents, which, again, cannot be the basis of an infringement action because they're in spot – they're expired. So there's no basis for a patent infringement case given this agreement. So to go back to the first question, just so I understand your argument, why is it that you think that the agreement couldn't be canceled and an infringement suit be brought just because it doesn't – you think the agreement doesn't include that provision or – Yeah, I'm not aware – If it included a provision that permitted the agreement to be canceled, would you agree then it's a Medtronic case? That would be a much different case. Without knowing the specifics, I can't say for sure. But certainly there has been no argument here that I'm aware of that there's any basis why this could be transformed back into a patent infringement case when the whole point of the licensing agreement and specifically the covenant not to sue is to take this out of patent infringement litigation and try to address it under state contract law. Well, I think you frustrate that with your counterclaim. I think that's the issue. Your Honor, the counterclaim reads on the same arguments I just made, that the counterclaim is based on this covenant not to sue where they have agreed not to enforce those patents. And their argument is, well, anytime patent enforceability is in the air, that has to go straight to the federal circuit. And I just don't think that can be reconciled with what the federal circuit has said in cases like Jim Arnold. We have to look at why that unenforceability is the case. And here it's because of state contract law. The only basis for unenforceability that we've raised, that we're talking about, that's in the counterclaim is state contract law. They've agreed not to sue based on these patents, and yet here we are. That's the argument. Your Honor, one other point while we're on. I do want to address substantiality because that's what was briefed. What cases like Gunn and Grable say when we're talking about substantial questions of federal law or a claim under a federal patent act is that we deal with disputed questions. When you're talking about undisputed questions that implicate federal law or a federal patent statutory issue, then that's not the sort of thing that creates a substantial question because what we're looking at here is something that is of systemic importance to the federal patent system as a whole. And that's the fundamental argument, Your Honor, is that there is nothing in this contract dispute, even the counterclaim, which is based on the contract, that makes this of any importance not only to the federal patent system as a whole but to anyone outside of these two parties. If we win on this patent misuse counterclaim, which we can talk about why we should win, the only thing that changes is that Honeywell can't enforce that contract against Opto. It remains fully available to them to try to pursue those claims against any other alleged infringer. That's why it's not a substantial question. And that's what the Third Circuit said in Aries Trading. And so we think that that is the correct analysis. That's what controls here. We would urge you to apply that decision just as the Third Circuit did because that's the correct result. I see that my time is nearing up. Are there any other questions about jurisdiction that I can answer? I do want to address the merits in my limited time. I can maybe address later the arguments about the pre-agreement damages, but I want to skip ahead to the fundamental threshold issue, which is whether there's any breach at all. There can't be a breach here, Your Honor, because Opto calculated its 2D barcode product sales in the exact same way that the agreement itself did. And I'm referring to Section 4.9 of the Second Amendment, which says that in this particular space for this particular calculation, that is 4.4 million euros. And there's no dispute of fact at all about where that calculation comes from. It's Opto's 2D barcode products. And we told Honeywell explicitly, and the spreadsheet makes clear explicitly, that that excludes all laser products, all laser and CCD products. And so when you have that situation where the contract itself applies the term, you can't apply that term, that same term elsewhere in the contract, in a way that's inconsistent with that term. And that's because the first principle of contract, or a first principle of contract law here, is that you have to reconcile two provisions in the same contract where you can. And we would say that Section 4.9 and the undisputed facts underlying that calculation cannot be reconciled with this notion that laser products, Opto's laser products, are 2D barcode products because the calculation just does not work if that's what's done. And there's no dispute about how we did the calculation. But Section 4.9 can be reconciled even with the district court's interpretation of Section 1.4, which we've argued is not correct. But for purposes of this argument, we assume that that interpretation on summary judgment was correct. And here's how to reconcile them. Because Section 1.4 itself doesn't answer whether lasers are 2D barcode products. To answer that question, the district court said, and Honeywell agreed, that we need a trial to determine whether stacked multi-row symbologies like PDF417 are 2D symbologies. That's what the whole trial is for. Honeywell didn't move for summary judgment on the notion that those stacked symbologies are, in fact, 2D symbologies. They didn't move for judgment as a matter of law after trial. So that was, I think they recognized that the jury had facts to determine that those stacked symbologies are not 2D symbologies. They're only 1D. And then laser products can only decode in 1D fashion. So they only decode word by word, line by line. So even when you have a stacked symbology, Opto's laser products read those stacked symbologies like a paragraph, word by word, line by line. So the fundamental nature of decoding that they do is 1D, linear. So any symbology that's decoded by lasers has to be 1D, even under the district court's interpretation. And that's why you can reconcile Section 4.9 with the district court's interpretation, and therefore we suggest that you must, for the same reasons that the district court did in Accenture, which is a great example of how that analysis should work. Can I just ask you to comment on one thing?  I'm just back to the jurisdictional point. Sorry, I'm totally stuck there. You probably figured that out. So the point in Medtronic was that the agreement said that if Medtronic stops paying royalties, the other party could terminate and then obviously bring the patent action. And when I read the agreement here that you have in 7.2, it seems to say the same thing, which is it can be terminated by Honeywell in the event that Opticon fails to pay the amounts due. That seems like the same provision that's in Medtronic, and I guess I don't know what to do with that. I mean, I understand your argument if that wasn't true, but that seems to be the same provision. I mean, I get Medtronic is summarizing it. It's not quoting it, but it reads the same way unless I got the parties backwards somehow. I don't think I do. I'll be candid, Your Honor. Since the parties haven't briefed Medtronic, I'm not fully understanding it. Yeah, totally fair. I'm being unfair. But I would say that what I would commend is look at the counterclaim, which does reference patent unenforceability, but it says that the basis for this are the facts and argument recited in the affirmative defense on patent misuse. And so when you were asking the question, what sort of claim are we really responding to here, it has to be that breach of contract claim. That's what the affirmative defense is responding to. Because your view is that patent misuse is limited to contract claims, but that's not true. In this case, as we have pleaded the claim, we've said that this is an issue that is based in response to a breach of contract. But that's the same issue in Medtronic, right? So the point in Medtronic is they're like, come on. I mean, the argument seems in Medtronic to have been like, come on. Everybody knows this is a breach of contract case. Like, stop. And the Supreme Court is like, no, no, no. We look at this hypothetical. It sort of says it's exceedingly unlikely to happen, but we still look at it, right? Your Honor, I would appreciate it if that's the direction that the court is considering, that it would be appropriate to have a supplemental briefing order just so that both parties can address this in full length. I'll reserve the remainder of my time for rebuttal, if I may. Thank you. Thank you. Stevens. So one thing that I found very interesting near the conclusion of my colleague's arguments was the contractual aspect or dispute was the basis of their affirmative defense. That's true. We're talking about the counterclaim. That's something different. They were seeking a remedy there. In the counterclaim, they're seeking unenforceability. They said it four times. In the argument to the district court below, orally, they said, we want something to stop them from suing us, and so you've got to hold these patents unenforceable. Scores of patents unenforceable. That's what makes this a patent case, and that's why jurisdiction is in Washington. I do note very quickly, Judge Richardson, you correctly pointed out 7.2 in the contract does make it cancelable. Moreover, you can sue on expired patents within the six-year limitation. Just because a patent is expired, you can no longer get adjunctive relief, but you can sue on it. Is your patent misuse, you all talked about like temporal patent misuse, and that has been the focus, but did your patent misuse claim also include the scope component? So in other words, you can claim patent misuse two ways. One, the patent's expired. Other is like you're trying to expand it beyond the scope of his claims. Did you make both arguments, or were you just making a temporal argument? It's not my arguments. I'm sorry. Yeah, I know. Y'all are hard to keep straight because they're declaratory actions and everybody's going different ways. Let me try to answer. Whoever it is that made the argument, did they make both of those arguments? Respectfully, the argument that was made is one that's completely untenable under patent law. We misused our patents because we didn't have a specific patent as to a very narrow slice of technology. That is contrary. That's a scope piece, right? That's saying that you're using the license to expand the scope of the patents. I think we're giving them a little bit of goodwill on that, but sure, if you want to consider that to be a scope. Then there's a separate argument that's a temporal argument. I think that's right. Now, of course, the products that we allege we're not paying for, they have admitted in writing and orally before Judge Bell, infringed scores, 20s, of Honeywell's unexpired patents through the end of the agreement. That's why the merits of the patent misuse claim dies before we even get into it. The fact that they have conceded that the very laser-based products that we're talking about in this case infringed scores of Honeywell's unexpired patents, putting everything else aside. That's why there could never be an actual holding of patent misuse on the merits. But, again, if you find that they had a claim asking for the court to render a Honeywell patent unenforceable, not just have the court say that the contract should be viewed their way, but if they were trying to have one of our patents rendered unenforceable, that's the jurisdictional problem. Do you think it's a – in other words, is it a pleading issue? So, in other words, if the lawyer had done it differently, but we otherwise had the similar story, but they just never asked for unenforceability, in that scenario, it might not be exclusive jurisdiction. Had they pledged just their affirmative defense of patent misuse, but not their counterclaim of patent misuse seeking unenforceability, I would agree that this court would have jurisdiction over the appeal of that case. Turning to the merits of the case, the first thing that my friend at the other table brought up was the Second Amendment and said it was very, very clear that there's a calculation of European sales. I want to be as clear as I can with this court that that was very much a dispute of fact. It went to the jury and was resolved against Opto in front of the jury. Opto didn't bring a single person to trial that sat there and spoke about that document and spoke about how it was generated. That person didn't exist, and there was testimony in the record in the joint appendix from Honeywell that we did not understand the document in the way that they're currently saying that we should have understood it. Moreover, counsel said, well, we told them that this certain thing did or didn't include laser scanners. That doesn't answer the question. There's laser scanners that fall under the definition of 1D barcode products, and there's different laser scanners that fall under the definition of 2D barcode products. There's never been any explanation either at the time, during trial, since trial, as to what extent that spreadsheet honored that difference whatsoever. Moreover, the testimony at the trial of the person who actually paid the royalties was she was told orally when to pay and when not to pay. She was never even allowed to see the contract. She was told if a product doesn't support every single 2D symbology, don't pay a royalty on it. Only pay a royalty on products that support every single 2D symbology. That was the testimony at trial. And, of course, we can all read Section 1.4, and that's simply incorrect. That's not what the definition says. It says at least one two-dimensional symbology. Moreover, there was a notion of, well, my friend at the other table brought up the fact that we didn't jame-all on the fact that PDF-417 is a two-dimensional symbology. We won that issue. The jury sided with us. We're not going to jame-all the court when the court's entering judgment consistent with our theory of the case. There's no jame-all available to a winning plaintiff. That's why we didn't jame-all it after the case. The jury agreed with us. The judge entered judgment in accordance with the verdict just as we wanted him to. There was no opportunity. There was no manner that we should have jame-all that. And then second, this notion of the fact that there might be a dispute of fact about whether a symbology is 1D or 2D, and that somehow blows everything up and renders everything ambiguous, that's not the case at all. That's a question of fact. Now, the agreement tells us where to look. And, you know, I heard this notion of a stacked symbology. They admitted in their closing argument that PDF-417 is a two-dimensional symbology. Their witnesses came, swore on the Bible, told the court that it was a two-dimensional symbology. Their own expert wrote the book on the symbology and said it was a two-dimensional symbology. So this notion that now we should revisit the factual question of whether PDF-417 is one-dimensional versus two-dimensional, first off, it's entirely a fact question, but second, if you were to look at the record, I think you'd find much, much more than significant evidence that supported the verdict, which is why the court was correct to deny their 50B motion. I see that I'm out of time. I'm happy to answer any further questions. One aspect is jurisdiction. Isn't it true that Opto is really only looking at perhaps the, if you will, enforceability or the question about the validity of the patent to the extent that it's a contract question? Isn't it a contract question, really, here? You must have thought so, too. You didn't brief jurisdiction at all, right? I mean, of course, we filed a motion regarding jurisdiction. Yeah, but you didn't. Did you raise that question? You didn't brief it really adequately, did you? To this court or to the district court below? Well, the district court, you didn't do that there. I know, the district court, I know. But in terms of here, you seem to say that this is not a question in terms of the patent. You said this is purely a declaratory judgment. It's only a patent question but not a contract question. Well, isn't it they're only seeking in terms of the enforceability, in terms of potentially in validity of the patent, is solely a contract question, right? Well, that's a contract issue, isn't it? Their theory was if the contract is to be read the way that we believe it should be read, that there would be patent misuse under the patent law version of patent misuse, and the remedy should be find all of our patents unenforceable until the contract is reviewed. So it is asking for a patent-related issue. Again, had they done that purely in the context of their affirmative defense, which is more akin to what I think, Judge Greger, you're pointing out, if they had just said in the affirmative defense, you can't read the contract the way that Honeywell does because it would result in this patent misuse. You should read it our way, which it doesn't. If that had been the end of what they were seeking and it was just in their affirmative defense, I would have no quibble that this court would be the court of proper jurisdiction. The difference is, whatever the underlying reason might be, is they wanted the court to hold our patents unenforceable. That inherently is a patent law claim and a patent law remedy that the Federal Circuit has said repeatedly falls within their exclusive jurisdiction. If we're just talking about what effect something has on a contract, different question. But if the result of that is to find a patent invalid or valid or unenforceable or enforceable, that question is one that can only be answered vis-à-vis the patent laws and thus exclusive jurisdiction to the Federal Circuit. All right. Very well. Thank you very much. Mr. Spaulding. Thank you, Your Honor. I want to take one more run at jurisdiction. I think you should because I think that's going to be very important in terms of this court's decision. I agree. I agree. I want to start with this notion that Mr. Stevens is urging, that whenever you have patent unenforceability at issue in a case, that's an automatic one-way ticket to the Federal Circuit. And that just cannot be right. And let me give you an example of that. I think we would all agree. No, he doesn't. I think that's the straw man, right? Because he says if you had just raised an affirmative defense arguing that they were unenforceable, then that would not be a Federal Circuit issue. So I don't think he would say just because it's available. I think he would say any counterclaim. Oh, yeah, yeah. But that's a different statement, right? You said any time it's in a case, that's not what he's arguing. All right. Let me narrow it then. It is not the case that whenever there is a counterclaim that mentions the magic words patent unenforceability, that that is a guarantee that you're headed to the Federal Circuit. Because patent unenforceability can be a simple function of contract. I agree not to enforce my patent against you. That is a creature of pure state contract law. That is not the sort of thing that takes you to the Federal Circuit. And if that is true, Your Honors, I suggest that is exactly what we have here. The basis for unenforceability. But that's not what you argued below. You argued below that the patent, because they were expired, I think it's patent. I was trying to figure out the number. Because the patent was expired, basically, I think the argument was that Honeywell should not be able to extract royalties for the patent below. You would agree, right? Yes, I would agree. But the reason that that is patent misuse, the reason that unenforceability of these patents follows from that is because of the covenant not to sue in Section 2.4. But then the District Court does this whole analysis on the package theory and why, I think he said six years. And the spirit of what Congress has intended for exclusive jurisdiction of the Federal Circuit is that they don't want different circuits conflicting with the Federal Circuit as to patent law. The judge goes through this whole analysis on the package theory, why it's not expired, as to your counterclaim. Because you're asking this question of enforceability. So two things, Your Honor. It is very clear among all the circuits that just having these patent issues in the air isn't the sort of thing that triggers Federal Circuit jurisdiction. I understand. It has to be more than that. But second, if the concern is uniformity, I think what my friend on the other side conceded is that there's not going to be uniformity if you send this case to the Federal Circuit. Because this can always be raised as an affirmative defense only. And frankly, some treatises say it should only be raised as an affirmative defense. But you raise it as a counterclaim. That's the problem. But there's no difference in the uniformity that's going to result in the circuits based on whether it's a counterclaim or an affirmative defense. If that's the rule, then it's going to be very easy to keep jurisdiction in the geographic circuits just by saying it's an affirmative defense rather than a counterclaim, which we easily could have done here. There's no material difference other than one happens to be the basis for jurisdiction. That's just the result of the amendment to add compulsory counterclaims to this, right? I'm sort of with you. I'm not sure it makes any darn sense, right? But that's a different question than when they added compulsory counterclaims that are rise under. And we know that we have to flip declaratory judgment actions. And then that's a different sort of problem that you've got. Your Honor, I do want to address one last thing, which we briefed and I haven't gotten to yet. But we have to start with the text of Section 1295A1. And shame on me for not starting there. What the text says is that we look at whether the cause of action arises under an act of Congress relating to patents. What I thought we would have heard today is an identification of what act of Congress relating to patents creates this cause of action. Because that's what you need to have this not merely be patents in the air. Let me ask you. The cause of action that we're asking about is for patent infringement, not the declaratory judgment act, right? Because when we get a declaratory judgment, we flip it and we ask, what would the affirmative cause of action? This is what Medtronic tells us, right? It's also true in federal jurisdiction. When we have arising under declaratory judgment, we flip it, right? So we flipped it. The act of Congress is the patent infringement question. I get your brief argued this in the previous iteration. You had a section on this argument. You said this. But we flipped it. And so the question is, does a patent infringement action arise under an act of Congress? And I can't give you the number, but the answer to that is yes. It does. A patent infringement action under Section 271, that's certainly and that's exactly what Section 1295A1 was meant to do. It's the Holmes Group fix. Yep. But I come back, Your Honor, and maybe this is something that we just need to brief with Medtronic in view, and this first angle, potential angle on jurisdiction in view is that this is not a patent infringement case. And it's strange to say. So I understand your argument. That's a different argument, right? That's to say once we flipped it, you're saying, and I totally understand the argument. I might think it's wrong, but I understand the argument that you could only bring a breach of contract case. And so when the Supreme Court says it's unlikely, which you want to say it's impossible to bring a patent infringement case here, I don't see that being true, but I totally understand that argument. It's a separate one to say there's no act of Congress if patent infringement is the appropriate affirmative action. Right. I think it's a slightly different argument, Judge Richardson, that when you have this scenario, this scenario being we're not the plaintiff. We're not the one bringing a declaratory judgment in the first instance. We are the defendant. Bringing a compulsory counterclaim. With a counterclaim. Now, it's a compulsory counterclaim because what we're talking about is hooking on to an affirmative defense against a breach of contract. There's no dispute that's a compulsory counterclaim. If we're talking all of a sudden about the unenforceability of patents that are not being asserted here, like a true patent infringement hypothetical affirmative claim, we did not agree that that's a compulsory counterclaim, and I doubt it would be because that's a separate issue sounding in a patent claim under Section 271, not a breach of contract claim. So if that's what I'm hearing. I don't understand that, but you're saying if it's separate from the patents that are at issue in the agreement? If we're talking about the unenforceability of patents that are not the basis for the lawsuit, then I'm not at all sure that that's a compulsory counterclaim in any event because it's not. Why would we be talking about those? I'm not sure I understand. Help me. I'm not trying to be difficult. I really am trying to understand why would we be talking about those as opposed to the counterclaim that's about the very patents that y'all are fighting about? Because they're not trying to enforce those patents against us. They're trying to enforce a contract. That's the only distinction I'm drawing is that when you're talking about the enforceability of patents, that's not the same case. That's not the same transaction or occurrence. If the affirmative claim, the one that we would look to in a Medtronic analysis, is a breach of contract claim. That's what I'm arguing. Okay, but you understand Medtronic was a breach of contract claim. The argument that the amicus make in Medtronic is this is a breach of contract claim. I'm speaking out of turn here, but not a patent misuse case, I don't believe. But I understand why that makes a difference. I'm with you, but that is a possible way of distinguishing. It also was decided on Tuesday, right? But the question is why that matters. It matters because it's a different sort of claim that arises. It's not a claim that's created by federal law. That's the argument, but I think we're going around in circles now. This is important, particularly in terms of, well, not both, but you certainly alluded to a 28J type letter in terms of being able to reinforce it. That may be fair in terms of an important question like this, but to answer Judge Benjamin's questions to you, is your position that this does not require any patent law to resolve? Kimball says that, in the way that Arias quoted it, that patent misuse cases are patent cases. And my response to that was that that's not sufficient. It's not sufficient that there be patent issues involved. You have to actually answer the question whether a federal patent statute creates the cause of action or the cause of action. Is it patent issues or patent subject here? The subject of the contract may be patent, but the question is, is there a patent issue of law here? Not in the sense that 1295A1. Right. I think that's your argument. It's right. It may be the subject is patent. That's not enough. It has to be whether it's a legal issue, the question is.  That's right. All right. Thank you.  All right. I thank counsel all. We'll come down and get counsel and proceed to our final case for this morning.
judges: Roger L. Gregory, Julius N. Richardson, DeAndrea Gist Benjamin